# UNITED TRANSPORTATION UNION, LOCAL NO. 1699, Petitioner,

### v.

# NATIONAL LABOR RELATIONS BOARD, Respondent,

### Safeway Trails, Inc., Intervenor.

### No. 75–1561.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1976.

Decided Dec. 9, 1976.

Edward D. Friedman, Washington, D.C., for petitioner.

Bert Bisgyer, Atty., N. L. R. B., Washington, D.C., with whom John S. Irving, Jr., Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D.C., were on the brief, for respondent.

John H. Leddy, Philahelphia, Pa., with whom Warren W. Woods, Washington, D.C., was on the brief, for intervenor.

Before BAZELON, Chief Judge, and WRIGHT and ROBINSON, Circuit Judges.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

The primary issue presented by this petition for review is accurately stated by the National Labor Relations Board's General Counsel in his amended memorandum to the Board[1] in support of his exceptions to the findings and conclusions of the Administrative Law Judge (ALJ). It is whether "[t]he Administrative Law Judge committed fundamental error in finding that the General Counsel conceded that [the employer's] conduct at the bargaining table was in good faith and, on the strength of that finding, [in] refusing to find that Section 8(a)(5) was violated in the manner alleged."[2] If the ALJ was in error in this finding his ultimate conclusion that no Section 8(a)(5) violation had been shown must also be set aside since the ALJ, acting on an assumption of good faith at the bargaining table, appears to have placed on the General Counsel a greater burden of proof than would otherwise have been the case.[3]

1. The Board affirmed the ALJ's findings and conclusions.

2. The ALJ prefaced his decision with this statement:

> I do not in any event agree with [the position of the General Counsel and the union] that [the employer's] "at-the-table" bargaining is in issue here. Based on a pre-hearing conference held in this case, various discussions and positions at the hearing, and the way the entire proceeding was tried, I am satisfied that the at-the-table bargaining not only *was not* [emphasis in original] under attack, *it was conceded, at least by the General Counsel, that the bargaining was conducted in good faith.* That was my understanding at the hearing, and I see no reason to change my view. * * *

JA 8 (emphasis added; footnote omitted).

3. The ALJ stated at the outset of his opinion:
> * * * I shall consider herein whether the away-from-the-table conduct was *so perni-*

The General Counsel's position throughout the proceeding, accurately summarized by the ALJ, was that intervenor Safeway Trails had sought to undermine the bargaining representatives of the union, thereby "demonstrating that [Safeway Trails] had no intention of reaching agreement with the Union." JA 7. Section 8 of the General Counsel's complaint set out a series of acts which, if proved, constituted a "campaign to discredit Union Chief Negotiator John Lantz and the Union's negotiating committee * * *." Supp. JA 16. In short, it was "the General Counsel's contention that this campaign to deal with the Union through the employees rather than deal with the employees through the Union was the very essence of bad faith bargaining and constitut[ed] a violation of [Section] 8(a)(5) of the Act." Tr. 18. In his opening remarks the General Counsel characterized this theory as alleging an "overall bad faith charge." Tr. 14. Despite these statements the ALJ concluded that the General Counsel had conceded "that the bargaining was conducted in good faith." JA 8. Because the ALJ did not refer to any point in the record where a concession directly opposite to the opening remarks of counsel could be found, and because we have found no such part of the record, we think the ALJ's conclusion is, at the very least, suspect.

■ We further think it inconceivable that the General Counsel would have conceded good faith at the bargaining table in the off-the-record pretrial conference. As we understand the legal theory of the General Counsel, the scope of the concession that was made was simply that neither side sought to introduce evidence about the "ex-

ternals of [the] collective bargaining," *General Electric Co.,* 150 NLRB 192, 194 (1964), *enforced,* 418 F.2d 736 (2d Cir. 1969), *cert. denied,* 397 U.S. 965, 90 S.Ct. 995, 25 L.Ed.2d 257 (1970), because evidence of what happened at the table was simply not sufficiently probative of Safeway Trails' lack of desire to reach an agreement to warrant the burden of putting the information into the record.[4] In omitting evidence about the actual course of negotiations, the General Counsel appears to have been relying on *General Electric Co., supra,* in which the Board stated:

> Good-faith bargaining thus involves both a procedure for meeting and negotiating, which may be called the externals of collective bargaining and negotiating, *and a bona fide intention, the presence or absence of which must be discerned from the record.*

150 NLRB at 194 (emphasis added). While the *General Electric Co.* Board relied on behavior at the bargaining table to infer lack of a bona fide intent, *see id.* at 195–196, it also specifically found that the "negotiations themselves * * * maintain[ed] the form of 'collective bargaining' * * *," *id.* at 196. Without further explanation, we do not see any reason why the propriety of the "form of 'collective bargaining'" could not be conceded and yet overall bad faith still be found. On the other hand, if the General Counsel both introduced no evidence concerning the "externals" of the at-the-table bargaining and conceded "good faith," there would appear to be nothing left of his case under *General Electric Co.*[5]

---

cious as to warrant a conclusion that [the employer] could not have been bargaining in good faith at the table no matter what was shown to have taken place during the bargaining sessions.
JA 8 (emphasis added). The proposed "so pernicious" test appears to require more than a showing of disparagement. Also, at the end of his opinion the ALJ took the position that some showing of ambiguous bargaining table behavior was required to make out a § 8(a)(5) violation on away-from-the-table evidence. JA 44. The ALJ then concluded that, "*a fortiori,*" good faith at the bargaining table prevented a find-

ing of a § 8(a)(5) violation. *Id.* We think this conclusion is not free from doubt and can be sustained only if more adequately explained.

4. This point was made by the General Counsel in his brief to the Board. It is also supported by the transcript. *See* Tr. 557–558, 589.

5. When the ALJ stated that the bargaining had been in good faith, he may have been speaking colloquially about the "externals," but we cannot be sure on this record that the ALJ did not also think some concession had been made about the overall good faith of Safeway Trails.

It is true, of course, that the ALJ should be sustained if he decided correctly that a Section 8(a)(5) claim could not be made out in the absence of at least some evidence of bad faith at the bargaining table. JA 42–44. However, we do not think such a result is required by *General Electric Co.,* which we read to stand for the following propositions:[6] If intervenor's away-from-the-bargaining-table activities with respect to its employees were directed toward undermining the bargaining representative of those employees, bad faith and a Section 8(a)(5) violation have been established even though overt evidence of that bad faith does not appear at the bargaining table itself. If the authority of the employees' bargaining representatives at the bargaining table has been subverted, as far as the interests of the employees are concerned it matters little where and when the subversion took place. Moreover, we do not find any indication that any party to the proceedings before the ALJ thought that at-the-table evidence was necessary and, indeed, the record shows that Safeway Trails as well as the General Counsel sought to keep evidence of the negotiations out of the record. Tr. 558. In these circumstances, Board confirmation of the ALJ's opinion that some at-the-table evidence of bad faith must be introduced to make out a Section 8(a)(5) violation can at best indicate that the Board has impermissibly "backed into" a change of the law. *See Greater Boston Television Corp. v. FCC,* 143 U.S.App.D.C. 383, 394, 444 F.2d 841, 852 (1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971).

Given the uncertainties that surround both the Board's and the ALJ's opinions here, we vacate the Board's order and remand this case to the Board for reconsideration.

*So ordered.*

---

6. We recognize that the Second Circuit, in upholding the Board's order in *General Electric Co.,* did not adopt precisely this view, but placed reliance on General Electric's policy of take-it-or-leave-it bargaining as well. *See* 418 F.2d at 756, 760. The Second Circuit did not, however, take the position that proof of an at-the-table violation was always required. Instead, the court stated the proper test to be one considering all the facts and circumstances, including actions which in themselves did not violate the National Labor Relations Act. *See id.* at 756–757. In any case, the legal sufficiency of the theory stated in text is not before us now since we cannot be sure what view the Board adopted in this case.